SOUTHERN RICE SALES CO., INC. *v.* UNITED STATES (No. 4054)[1]

[1] T. D. 49304.

United States Court of Customs and Patent Appeals, November 22, 1937

*Mark Eisner (Allan R. Brown* and *Oscar Igstaedter* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *William Whynman,* special attorney, of counsel), for the United States.

[Oral argument October 6, 1937, by Mr. Brown and Mr Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges [1]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding imported rice dutiable at 2½ cents per pound as "milled rice (bran removed, all or in part)" under paragraph 727 of the Tariff Act of 1930, as assessed by the collector at the port of New York, rather than at 1½ cents per pound as "brown rice (hulls removed, all or in part)" under that paragraph, or, alternatively, at 20 per centum ad valorem as a cereal breakfast food, or a similar cereal preparation, under paragraph 732, or at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558 of that act, as claimed by appellant.

The paragraphs in question read:

PAR. 727. Paddy or rough rice, 1¼ cents per pound; brown rice (hulls removed, all or in part), 1½ cents per pound; milled rice (bran removed, all or in part), 2½ cents per pound; broken rice which will pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of one inch in diameter, and rice meal, flour, polish, and bran, five-eighths of 1 cent per pound.

PAR. 732. Cereal breakfast foods, and similar cereal preparations, by whatever name known, processed further than milling, and not specially provided for, 20 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Considerable evidence was introduced on the trial in the court below.

---

[1] Graham, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.

The rice of which Illustrative Exhibit A is representative is white in color and is bought and sold in the trade as "milled rice" or "cleaned rice."

The rice of which Illustrative Exhibit B is representative is brown in color and is bought and sold in the trade as "brown rice."

The imported merchandise, represented by Exhibit 1, is darker in color than the white rice, but lighter than the brown rice.

Lalsingh Gungasingh, of Calcutta, India, manager of the mill where the involved rice was processed, testified that—

The paddy was cleaned and put into iron-pots and steamed and then put into tanks and cold water poured over it. After soaking for 36 hours the paddy was taken out and again put into iron-pots, steamed and then spread out on the floor to dry. Then the dried paddy was put into a huller and the bulk of the husk (about 60%) removed. The balance 40% which still remained was removed by a second hulling when, incidentally, a part of the bran was also removed;

that the rice was neither brushed nor polished; that such bran as was removed from it was not intentionally removed; and that the rice was not "subjected to any treatment beyond hulling."

Exhibit 3, a pamphlet issued by the Department of Agriculture of British Guiana, was introduced in evidence by counsel for appellant. It describes, among other things, a method of producing parboiled rice, which, counsel for appellant contend, is similar to the method used in the production of the involved rice. We quote from the exhibit:

The paddy is first soaked in water for 16 to 30 hours. In many instances cold water is used, but in the best factories the temperature of the water is raised to 150°–180° F. before the paddy is introduced into the soaking tanks. The water is later (i. e., 16–30 hours after) run off and the paddy is subjected, for a period of 10–15 minutes, to the passage of low pressure steam. In practice, the steaming is continued until the grains "swell," or become enlarged sufficiently to distend the hulls. The parboiled grain is then dried on concrete floors in the sun for one or two days, or in some instances hot-air dried, and the paddy is then *ready for milling*.

The advantages derived from this process are that the grain is shelled with the greatest possible ease, only simple machinery being necessary; the grain is toughened by the process and can be *subjected to severe milling* without great loss from breakage. Also parboiled rice keeps better and longer than white rice. [Italics ours.]

The exhibit also contains the following:

It is desirable to draw attention to the unfortunate term—*Brown Rice*—which is often applied to parboiled rice, a term tending to mislead for the two following reasons:

(1) *Brown rice* is a recognized market term for rice which must normally be subjected to further milling processes before being ready for consumption. Demerara Rice, as at present produced, needs no further milling, and on being cooked is ready for consumption.

(2) *Parboiled Rice*, although creamy or pale coffee colour *when milled*, becomes white on being cooked. Therefore from the point of view of the consumer,

who is unquestionably the most important person concerned, this cannot correctly be termed "brown." [Except the words "when milled," italics quoted.]

It further appears from that exhibit, as well as from the evidence of record, that parboiled rice, such as that here involved, has a greater food value than the white rice of commerce (being richer in fat and protein), is more digestible, and remains sweet for a longer period of time. It also appears from the record that such rice is used as is the ordinary white rice; that is, "as a vegetable; rice puddings; breakfast food, and [in] any other manner you would cook the other rice."

Two of the importer's witnesses testified that the bran had not been *removed* from the imported rice, but had been *absorbed*, as we understand their testimony, by the inside or starchy portion of the kernel; one did not know whether any of the bran had been removed; one testified that some of it had been removed, possibly less than 10 per centum; and another, the manager of the mill where the involved rice was produced, testified that a part of the bran (he did not state how much) had been incidentally and unintentionally removed.

The Government introduced the testimony of three witnesses, only two of whom were interrogated regarding the presence or absence of bran on the imported rice—Fred W. Rickert and William D. Smith.

Rickert, president and owner of the Rickert Rice Mills, Inc., New Orleans, La., who had been connected with the "operating and the selling end of rice milling" for practically his entire life, said that nearly all of the bran had been removed from the rice in question.

Smith, an employee in the economics branch of the United States Department of Agriculture and in charge of the Federal supervision of rice grading for fifteen years, testified that a major portion of the bran had been removed from the imported rice, but that, like practically all milled rice, it had "some bran left."

Each of those witnesses testified that the germ had been removed from the imported rice, which was not the case with rice which had been processed for the purpose of removing the hulls only. Each of them testified also that he was familiar with parboiled rice.

All of the witnesses who testified regarding the removal of the bran, except the witness Lalsingh Gungasingh who did not explain the source of his knowledge, were testifying from an ocular examination of the imported rice.

The mechanical processes necessary to produce "brown rice" and "milled rice" were fully set forth by the witness Rickert, but we deem it unnecessary to quote his testimony here. It is sufficient to say that "brown rice" is produced by the removal of the hulls or husks, and that "milled rice," although frequently subjected to further processing, is produced by the removal of the hulls or husks and the bran.

The trial court concluded from the evidence in the case that, by virtue of the processes to which it was subjected, the imported rice had had a major portion of the bran removed, and, therefore, was not "brown rice" as claimed by counsel for the importer, but was dutiable as "milled rice" as assessed by the collector. The court stated in its opinion that the statutory phrase "milled rice (bran removed, all or in part)," although not defined in paragraph 727, *supra*, was not intended by the Congress to be limited to rice which had been subjected to any particular processing, but rather was intended to relate to a condition of rice, and, in this connection, said:

In other words, * * * "milled rice (bran removed, all or in part)" was intended to describe a condition of rice. That condition may be brought about by its having passed through the processes customarily used in milling in this country or by passing through a large number of processes, if the result produces a rice from which the bran has been removed all or in part.

It is contended by counsel for appellant that whatever bran was removed from the imported rice was unintentionally removed in the hulling, not in a milling, process; that the rice is brown in color due to the presence of bran, which was caused to adhere to the kernel by the parboiling process; that *"The fact that this merchandise has been parboiled tends to take"* it *"out of the class of milled rice,"* and puts it *"into the class of brown rice"* [italics ours]; and that, therefore, the imported rice is dutiable as "brown rice (hulls removed, all or in part)." It is further contended by counsel for appellant that, due to the fact that the imported rice was parboiled prior to the removal of the hulls, it is not dutiable as milled rice, because it has been "processed further than milling," and that if it is not dutiable as brown rice under paragraph 727, *supra*, it is dutiable under paragraph 732, *supra*, as a cereal breakfast food, or a similar cereal preparation, "processed further than milling."

It seems to be the theory of counsel for appellant that subjecting paddy—unhulled or unhusked rice—to the parboiling process changes the dutiable status of rice that would otherwise be classifiable as "milled rice (bran removed, all or in part)" and makes it something more than "milled rice"; whereas, the parboiling process does not change the dutiable status of "brown rice (hulls removed, all or in part)," but merely improves the quality of such rice. Accordingly, it is argued that if it should be found that the involved rice has had the bran removed, all or in part, and is not dutiable, therefore, as "brown rice (hulls removed, all or in part)," it should be held to be something more than "milled rice (bran removed, all or in part)," and dutiable as a cereal breakfast food, or similar cereal preparation, "processed further than milling" under paragraph 732, *supra*.

We think it clearly appears from Exhibit 3 that the advantages derived from the parboiling process are that the hulls or husks are

removed from the *rice with greater ease;* that "the *grain* is toughened * * * and can be subjected to *severe milling* without great loss from breakage" [italics ours]; and that parboiled rice keeps better and longer and is more nourishing than the white rice of commerce.

It further appears from that exhibit that Demerara rice, which, according to the evidence of record, is subjected to the same processes as was the involved rice, is not the "brown rice" of commerce, at least it is so stated in *advertising* Demerara—a parboiled rice.

We are unable to follow the reasoning of counsel for appellant that the parboiling process should be considered an ordinary process in the production of a high grade of brown rice, and so extraordinary in the production of milled rice as to require the classification of that product as "processed further than milling."

We are in entire agreement with the holding of the trial court that paragraph 727, *supra,* does not attempt to define "milled rice," but, having provided therein for "milled rice (bran removed, all or in part)", the Congress was intending to provide for rice in a certain condition; that is, rice which had been milled to some extent and from which the bran had been removed, all or in part.

On September 6, 1927, the Secretary of Agriculture, by authority conferred by the Congress (Public, No. 522, 69th Cong.) approved January 18, 1927, established certain "official standards" for "milled rice" and "brown rice," which, so far as pertinent, read:

MILLED RICE. [1]—Milled rice shall be whole or broken kernels of rice grown in continental United States, *from which the hulls and practically all of the germs and bran layers have been removed,* which may be either coated or uncoated, and which does not contain more than 10 percent of cereal grains, including paddy grains, seeds, or other foreign material, either singly or in any combination. [Italics ours.]

BROWN RICE. [1]—Brown rice shall be rice grown in continental United States *from which the hulls only* have been removed from not less than 90 percent of the kernels * * *. [Italics ours.]

Neither the quoted "official standards," nor paragraph 727, *supra,* contain anything relative to the processes to which "milled rice" should be subjected. Furthermore, although the "official standards," prescribed by the Secretary of Agriculture, limit milled rice to rice from which the hulls and *"practically all of the germs and bran layers"* have been removed, the Congress did not so limit the provision for milled rice in paragraph 727, *supra,* but, on the contrary, extended it to cover rice from which the bran has been removed "all or *in part.*" [Italics ours.]

We do not wish to be understood as holding that, if a negligible portion of the bran is removed during the process of removing the hulls or husks, the rice would be dutiable as "milled rice." As to that question, we express no opinion.

---

[1] See Handbook of Official Standards for Milled Rice, Brown Rice, and Rough Rice, issued by the United States Department of Agriculture, Bureau of Agricultural Economics, Washington, D. C., 1928.

There can be no doubt that some of the bran was removed from the rice in question. Two qualified witnesses testified that all of the "germs" and a major portion of the bran had been removed. The trial court accepted the testimony of those witnesses, and held that a major portion of the bran had been removed. We are unable to hold on the record before us that the court's finding in that regard is contrary to the weight of the evidence. We hold, therefore, that the merchandise is not "brown rice" within the purview of paragraph 727, *supra*.

Having held that the provision for "milled rice (bran removed, all or in part)," contained in paragraph 727, *supra*, was not intended to be limited to rice which had been subjected to any particular process or processes, but rather to rice in the condition there plainly stated, we are unable to agree with counsel for appellant that rice which has had the hulls and a major portion of the bran removed, but which has not been subjected to any subsequent processing, is "processed further than milling" merely because the paddy from which it was procured was subjected to a parboiling process.

Paragraph 732, *supra*, is limited to cereal breakfast foods, and similar cereal preparations, which have been "processed further than milling." Accordingly, we must hold that the involved merchandise is not covered by the provisions of that paragraph.

It may be said furthermore, that the record in the case at bar establishes that the involved rice is not chiefly used as a breakfast food, or similar cereal preparation, but is used precisely the same as is the ordinary white rice of commerce; that is, as stated by appellant's witness Moses, "as a vegetable; rice puddings; breakfast food, and [in] any other manner you would cook the other rice."

Error was assigned to the trial court's rejection of certain evidence offered by counsel for appellant. We find no error in this respect.

The judgment is *affirmed*.